**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 25, 2015**

# In the Court of Appeals of Georgia

A14A1562. SOUTHERN STATES-BARTOW COUNTY, INC. et
al. v. RIVERWOOD FARM PROPERTY OWNERS
ASSOCIATION, INC., et al.

DILLARD, Judge.

In this civil action, Riverwood Farm Property Owners Association, Inc., a group of private property owners in unincorporated Bartow County ("plaintiffs"), sued Southern States-Bartow County, Inc., several companies and individuals with ownership interest in Southern States (collectively "Southern States"), and Bartow County ("County"), alleging that a landfill Southern States proposed to develop on property it owned within the County violated zoning ordinances and should be enjoined. Following a grant of partial summary judgment in favor of the plaintiffs, Southern States appeals, arguing that the trial court erred in (1) finding that a 1993 county zoning ordinance applied to the property; (2) finding that Southern States

failed to retain its right to develop a landfill; (3) failing to find that the 1993 zoning ordinance violated the Georgia Constitution; (4) finding, alternatively, that Southern States waived any rights it had when it sought a new landfill permit in 2004; and (5) finding that it had subject-matter jurisdiction, despite the fact that the plaintiffs were also contesting the landfill permit in an administrative proceeding. For the reasons set forth *infra*, we vacate the judgment and remand for further proceedings consistent with this opinon.

Viewed in the light most favorable to the Southern States (*i.e.*, the nonmoving party),[1] the record shows that in 1989, Southern States filed an application with the Georgia Environmental Protection Division ("EPD") to develop and operate a solid-waste landfill on property that it owned on Hodges Mine Road in Bartow County. In connection with that application, Southern States was required to obtain a certificate of zoning compliance from the County, demonstrating that the landfill complied with local zoning and land-use ordinances.[2] But at that time, the County's applicable zoning ordinances did not allow for a landfill on the subject property. And

---

[1] *See, e.g.*, *McCaskill v. Carillo*, 263 Ga. App. 890, 890 (589 SE2d 582) (2003).

[2] *See* Ga. Comp. R. & Regs. 391-3-4-.05 (1) (a) ("The following criteria must be met for a site proposed as a solid waste handling facility: Zoning. The site must conform to all local zoning/land use ordinances.").

2

consequently, the County refused Southern States's request for a certificate of zoning compliance. Shortly thereafter, litigation ensued.

In 1991, in a separate but somewhat related action, the Supreme Court of Georgia declared the Bartow County zoning ordinance to be invalid on the ground that the County failed to comply with the Zoning Procedures Law.[3] And as a result, the Supreme Court held that there was "no valid restriction on the property, and the [property owner] has the right under the law to use the property as it so desires."[4] Then, on September 22, 1994, the Superior Court of Bartow County—in light of the Supreme Court's decision—issued an order, in which it ruled that because no *valid* zoning ordinance controlled in 1989 when Southern States submitted its landfill-permit application, Southern States had "a vested right to obtain a certificate of the right to use their real property without county land use restrictions . . . despite the enactment of a subsequent zoning ordinance." Accordingly, the superior court ordered the County to issue the necessary certificate, and it enjoined the County from prohibiting Southern States's operation of a landfill on the subject property.

---

[3] *See Tilley Props., Inc. v. Bartow County*, 261 Ga. 153, 154-55 (1) (401 SE2d 527) (1991); *see also* OCGA § 36-66-1 *et seq.*

[4] *Tilley Props., Inc.*, 261 Ga. at 155 (2).

Shortly thereafter, Southern States requested and received a certificate of zoning compliance from the County. Nevertheless, while it continued internal discussions and evaluations regarding development of the landfill for nearly ten (10) years, Southern States did little, if anything, toward moving the project forward and submitted no additional information, including the certificate of zoning compliance, to the EPD.

Eventually, in 2004, Southern States submitted what was characterized as a new permit application for a "Construction and Demolition" landfill. And although under the zoning ordinances in place at that time a landfill on the property was not a permitted use, the County—assuming that it was still constrained by the 1994 Superior Court order—issued a certificate of zoning compliance in support of Southern States's application. Still, the process dragged on for nearly another decade. And in January 2012, Southern States submitted to the EPD yet another certificate of zoning compliance issued by the County.

On May 23, 2013, while Southern States's application was still pending with the EPD, plaintiffs filed a complaint for declaratory judgment and injunctive relief against Southern States and the County, alleging that the proposed landfill violated County zoning ordinances. Later, plaintiffs amended their complaint to include claims

4

for anticipatory nuisance and violations of Georgia's Racketeer Influenced and Corrupt Organizations ("RICO") Act.[5] Southern States and the County filed answers, and in May 2013, Southern States filed a motion to dismiss, which the trial court denied.

On November 12, 2013, plaintiffs filed a motion for partial summary judgment, arguing that, based on the 1993 zoning ordinance in force at the time the superior court issued the 1994 order (ruling that Southern States had a vested right to operate a landfill), Southern States's vested right lapsed because it failed to commence using the property as a landfill within one year. The plaintiffs also contended that, notwithstanding the 1994 order, because Southern States sought a new EPD permit for the landfill in 2004, its actions were governed by the zoning ordinances in place at that time, which prohibited such use.

Shortly thereafter, on November 14, 2013, the EPD finally issued a solid-waste handling permit to Southern States, allowing it to develop and operate a landfill on its Hodges Mine Road property. Consequently, Southern States reasserted its motion to dismiss plaintiffs' nuisance claim, arguing that plaintiffs were required to challenge the grant of the EPD permit via an administrative proceeding before seeking relief in

---

[5] *See* OCGA § 16-14-1 *et seq.*

the superior court.[6] In that same motion, Southern States also sought dismissal of the plaintiffs' RICO and punitive-damages claims.

On December 30, 2013, following a hearing on all the pending motions, the trial court granted the plaintiffs' motion for partial summary judgment, finding that whatever vested right Southern States may have had (under the 1993 zoning ordinance) lapsed when it failed to commence using the property as a landfill within one year. The trial court also ruled, alternatively, that Southern States applied for a new permit with the EPD in 2004, and therefore, the County should have applied the "then-current" zoning ordinance to its determination of whether to issue another certificate of zoning compliance. Additionally, the trial court granted Southern States's motion to dismiss the plaintiffs' RICO and punitive-damages claims, but denied the motion to dismiss the anticipatory-nuisance claim.

Southern States then filed an appeal in the Supreme Court of Georgia, challenging the trial court's grant of partial summary judgment in favor of the

---

[6] *See* OCGA § 12-2-2 (c) (2) (A) ("Any person who is aggrieved or adversely affected by any order or action of the director shall, upon petition to the director within 30 days after the issuance of such order or the taking of such action, have a right to a hearing before an administrative law judge of the Office of State Administrative Hearings assigned under Code Section 50-13-40 and acting in place of the Board of Natural Resources.").

plaintiffs and the court's denial of its motion to dismiss plaintiffs' anticipatory-nuisance claim. However, the Supreme Court held that the issues on appeal failed to invoke its jurisdiction over equity cases or constitutional questions, and thus, transferred the matter to this Court.[7] This appeal follows.

At the outset, we note that it is well established that summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[8] If summary judgment is granted by a trial court, it enjoys no presumption of correctness on appeal, "and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met."[9] And in our *de novo* review of a trial court's grant of a motion for summary judgment, we are charged with "viewing the evidence, and all reasonable conclusions and inferences drawn from the evidence

---

[7] *See Southern States-Bartow County, Inc. v. Riverwood Farm Prop. Owners Ass'n*, Case No. S14D0715 (Decided February 20, 2014).

[8] OCGA § 9-11-56 (c).

[9] *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010).

7

in the light most favorable to the nonmovant."[10] Furthermore, we similarly apply a *de novo* standard of review to the trial court's denial of a motion to dismiss.[11] With these guiding principles in mind, we turn now to Southern States's specific claims of error.

1. Southern States contends that the trial court erred in denying its motion to dismiss plaintiffs' anticipatory-nuisance claim. Specifically, it argues that the court erred in finding that it had subject-matter jurisdiction over the case despite the fact that the plaintiffs were also contesting the landfill permit in an EPD administrative proceeding. Because subject-matter jurisdiction is a threshold issue,[12] we will address this claim first and, in doing so, hold that the trial court did not err.

As noted *supra*, after plaintiffs filed this lawsuit—in fact only shortly before the trial court granted the plaintiffs partial summary judgment—the EPD granted

---

[10] *Benefield v. Tominich*, 308 Ga. App. 605, 607 (1) (708 SE2d 563) (2011) (punctuation omitted).

[11] *See Miller County Bd. of Educ. v. McIntosh*, 326 Ga. App. 408, 411 (1) (756 SE2d 641) (2014) (applying a *de novo* standard of review to the trial court's denial of a motion to dismiss plaintiff's complaint for failure to exhaust administrative remedies).

[12] *See Live Oak Consulting, Inc. v. Dep't of Cmty. Health*, 281 Ga. App. 791, 794-95 (1) (637 SE2d 455) (2006) (noting that, as a threshold matter, a trial court should determine its jurisdiction); *accord Dep't of Transp. v. Dupree*, 256 Ga. App. 668, 671-672 (570 SE2d 1) (2002).

Southern States's permit application. Immediately thereafter, plaintiffs challenged that administrative grant under OCGA § 12-2-2 (c) (2) (A), which provides that:

> [a]ny person who is aggrieved or adversely affected by any order or action of the director shall, upon petition to the director within 30 days after the issuance of such order or the taking of such action, have a right to a hearing before an administrative law judge of the Office of State Administrative Hearings assigned under Code Section 50-13-40 and acting in place of the Board of Natural Resources.

In light of this statute, Southern States argues that plaintiffs should have been required to exhaust their administrative remedies before seeking resolution of its anticipatory-nuisance claim in the superior court. We disagree.

Southern States is correct that decisions of the Supreme Court of Georgia have held that "where a statute provides a party with a means of review by an administrative agency, such procedure is generally an adequate remedy at law so as to preclude the grant of equitable relief."[13] But here, a proceeding under OCGA § 12-2-2 (c) (2) (A) will not resolve the plaintiffs' primary claim that Southern States's operation of a landfill on its property violates County zoning ordinances. Indeed, if

---

[13] *George v. Dep't of Natural Resources*, 250 Ga. 491, 492 (299 SE2d 556) (1983) (punctuation omitted); *accord Flint River Mills v. Henry*, 234 Ga. 385, 387 (216 SE2d 895) (1975).

the plaintiffs' contention that the County should be prohibited whatsoever from issuing Southern States a certificate of zoning compliance ultimately prevails, the EPD permitting process is essentially a dead letter.[14] Consequently, the administrative-permitting process and its appeal provisions do not "provide the [plaintiffs] with an adequate remedy and the superior court did have jurisdiction to issue an injunction."[15] Accordingly, the court did not err in denying Southern States's motion to dismiss.[16]

2. Southern States also contends that the trial court erred in finding that the 1993 Bartow County Zoning Ordinance Section 6.1.4 was applicable to its vested right to operate a landfill on its property as recognized by the 1994 Superior Court Order. Again, we disagree.

---

[14] *See supra* note 2, Ga. Comp. R. & Regs. 391-3-4-.05 (1) (a).

[15] *Emmons v. City of Arcade*, 270 Ga. 196, 198 (2) (507 SE2d 464) (1998); *accord Galaxy Carpet Mills, Inc. v. Massengill*, 255 Ga. 360, 361 (2) (338 SE2d 428) (1986).

[16] *See Emmons*, 270 Ga. at 198 (2) (holding that because it was city's flawed decision-making process that aggrieved citizens, and not issuance of landfill permit, administrative-permitting process and its appeal provisions did not provide them with adequate remedy at law, so that superior court had jurisdiction to issue injunction).

Section 6.1.4 of the Bartow County Zoning Ordinance, which became effective in September of 1993, provided:

> Any intended non-conforming use for which a vested right was acquired prior to the adoption of this ordinance or the adoption of an amendment thereto shall be prohibited unless such is actually commenced within one year of the adoption of this ordinance or the adoption of an amendment thereto regardless of the intent or expectation to commence or abandon such non-conforming use.[17]

Here, the Bartow County Superior Court recognized Southern States's vested right to develop a landfill in its 1994 order, but the right was actually acquired in 1989 when Southern States submitted its application for a landfill permit to the EPD.[18] And given that our Supreme Court held in 1991 that the County's zoning ordinance in place in 1989 was void,[19] the first applicable zoning ordinance was the ordinance effective in 1993. Accordingly, the trial court did not err in finding that §

---

[17] Zoning Ordinance Bartow County § 6.1.4 (effective September 1993).

[18] *See Fulton County v. Action Outdoor Advertising, JV, LLC*, 289 Ga. 347, 350 (1) (711 SE2d 682) (2011) (holding that when an applicant submits an application in accordance with applicable ordinances, the applicant has a vested right and is entitled to the permit); *WMM Props., Inc. v. Cobb County*, 255 Ga. 436, 438 (1) (b) (339 SE2d 252) (1986) (same).

[19] *See Tilley Props., Inc.*, 261 Ga. at 155 (2).

6.1.4 of the County's 1993 zoning ordinance was applicable in evaluating Southern States's vested right.

3. Southern States next maintains that the trial court erred in finding that it did not retain its vested right to operate a landfill because it failed to comply with § 6.1.4 of the County's 1993 zoning ordinance. Once again, we disagree.

As an initial matter, we note that the principles guiding our consideration of the meaning of statutes are settled ones, and we "apply those same principles when we consider the meaning of an ordinance."[20] Consequently, we look first to the text of the ordinance, and if the text is clear and unambiguous, "we look no further, attributing to the ordinance its plain meaning."[21] And as we look to the words of the ordinance, we attribute to those words their "ordinary, logical, and common meanings, unless a clear indication of some other meaning appears."[22] Furthermore, we read the ordinance as a whole "according to the natural and most obvious import of the

---

[20] *Daniel Corp. v. Reed*, 291 Ga. 596, 597 (732 SE2d 61) (2012); *accord Risser v. City of Thomasville*, 248 Ga. 866, 866 (286 SE2d 727) (1982).

[21] *Daniel Corp.*, 291 Ga. at 597; *accord Opensided MRI of Atlanta*, 287 Ga. 406, 407 (696 SE2d 640) (2010).

[22] *Daniel Corp.*, 291 Ga. at 597 (punctuation omitted); *accord Judicial Council of Ga. v. Brown & Gallo*, 288 Ga. 294, 297 (702 SE2d 894) (2010).

language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending its operation."[23]

As noted *supra*, § 6.1.4 of the County's zoning ordinance provides, in part, that "[a]ny intended non-conforming use for which a vested right was acquired prior to the adoption of this ordinance or the adoption of an amendment thereto shall be prohibited unless such is actually commenced within one year of the adoption of this ordinance . . . ."[24] And here, the non-conforming use for which Southern States obtained a vested right, as noted in the 1994 Superior Court order, was to operate a landfill on its property. The question, then, becomes whether Southern States "commenced" the "non-conforming use" of the property within one year so that its vested right did not lapse.

Southern States argues that it complied with § 6.1.4 of the 1993 zoning ordinance by obtaining a zoning-compliance letter from the County within a few months after the 1994 Superior Court order. But we disagree that the zoning ordinance can be read so expansively, as the plain meaning of "commencing" the

---

[23] *Daniel Corp.*, 291 Ga. at 597 (punctuation omitted); *accord Jones v. Douglas County*, 262 Ga. 317, 321 (1) (b) (418 SE2d 19) (1992).

[24] *See* Zoning Ordinance Bartow County § 6.1.4 (effective September 1993).

non-conforming "use" indicates the start of operating an actual landfill on the property and, therefore, at the very least, involves something more than submitting paperwork.[25] This, Southern States did not do. Indeed, it is undisputed that Southern States did not actually begin operating a landfill on the property within one year of the 1994 order or even within ten years. As such, the trial court did not err in finding that Southern States failed to comply with the 1993 zoning ordinance and that its vested right to operate a landfill, therefore, lapsed.[26]

4. Southern States further contends that, assuming it is applicable, the trial court erred in failing to find that the 1993 zoning ordinance violates the Georgia Constitution. Specifically, Southern States argues that Article I, Section I, Paragraph

---

[25] *See* The Compact Oxford English Dictionary 294 (2d ed. 1991) (defining "commence" as, *inter alia*, "[t]o make a start or beginning; to come into operation"); *id.* at 2204 (defining "use" as, *inter alia*, "[t]he act of employing a thing for any (esp. a profitable) purpose").

[26] *See Daniel Corp.*, 291 Ga. at 598-99 (holding that plain meaning of ordinance requiring alcohol licensee to "open for business" within nine months of issuance of license, with failure to do so resulting in automatic forfeiture of license, did not reflect any requirement as to the regularity or continuity of business).

X of the Georgia Constitution,[27] "forbids passage of retroactive laws which injuriously affect the vested rights of citizens."[28]

The record, in fact, shows that Southern States raised a constitutional challenge to the 1993 Bartow County zoning ordinance before the trial court in its response to the plaintiffs' motion for partial summary judgment. However, in granting the plaintiffs' motion, the trial court did not address Southern States's constitutional challenge, much less issue a ruling on its argument. Indeed, in its order transferring this case to the Court of Appeals, the Supreme Court of Georgia explicitly held that the trial court did not rule on Southern States's argument that the 1993 zoning ordinance is unconstitutional as applied to it.[29] We are, of course, bound by that order.[30] Thus, because a decision on the constitutional issue has the potential to affect

---

[27] *See* Ga. Const., Art. I, Sec. I, Par. X ("No bill of attainder, ex post facto law, retroactive law, or laws impairing the obligation of contract or making irrevocable grant of special privileges or immunities shall be passed.").

[28] *Fulton County v. Action Outdoor Advertising, JV, LLC*, 289 Ga. 347, 350 (1) (711 SE2d 682) (2011) (punctuation omitted).

[29] *See supra* note 7.

[30] *See Buchan v. Hobby*, 288 Ga. App. 478, 479-80 (654 SE2d 444) (2007) (noting that the Court of Appeals was bound by the Supreme Court of Georgia's transfer order, which held that the trial court did not rule on the constitutionality of a statute despite plaintiff's challenge to statute on such grounds).

15

the plaintiffs' lawsuit against Southern States, we must vacate the trial court's judgment and remand the case for consideration of the constitutional challenge or other proceedings consistent with this opinion.[31]

5. Finally, Southern States contends that the trial court erred in finding, alternatively, that Southern States waived any vested rights it may have had when it sought a new landfill permit from the EPD in 2004. And because affirming the trial court on this claim of error would potentially obviate any further proceedings in this matter, we must address it now. In doing so, we hold that genuine issues of material fact exist as to whether Southern States's application submitted to the EPD in 2004 constituted a new permit such that any vested rights resulting from the 1989 application were waived.

As noted in the affidavit of Southern States's consulting environmental engineer, by 2004, the EPD required permit applicants to submit additional information that was not previously required. But as the engineer further noted, on the relevant EPD form, there was no place to indicate that the applicant was

---

[31] *See City of Decatur v. DeKalb County*, 284 Ga. 434, 438 (2) (668 SE2d 247) (2008) (holding that a constitutional challenge will not be considered on appeal when it has not been ruled upon in the court below); *Buchan*, 288 Ga. App. at 480 (remanding case for consideration of constitutional challenge).

16

modifying a pending application. Thus, Southern States checked the box on the form indicating "new permit." However, as the engineer explained, Southern States's goal in this regard was merely to reduce the scope of its pending application. It was not seeking to restart the application process, and, in fact, according to the engineer, the 2004 application was made part of the EPD's original 1989 application file.

In response, the plaintiffs argue that "self-serving and conclusory affidavits are insufficient to create an issue for trial."[32] But in light of its level of detail, Southern States's engineer's affidavit can hardly be characterized as merely conclusory. And despite the apparent self-serving nature of this affidavit, "whether the testimony is credible is not an issue that the trial court can determine on summary judgment."[33] Indeed, given that all doubts are "to be resolved against [the plaintiffs]"[34] as movants, the affidavit presents a genuine issue of material fact as to whether Southern States's 2004 application constituted a new permit such that any vested rights resulting from

---

[32] *J. Kinson Cook of Ga., Inc. v. Heery/Mitchell*, 284 Ga. App. 552, 559 (d) (644 SE2d 440) (2007).

[33] *Barrett v. Britt*, 319 Ga. App. 118, 124 (736 SE2d 148) (2012) (punctuation omitted).

[34] *Id.* (punctuation omitted).

the 1989 application were waived. Accordingly, the trial court erred in ruling otherwise.[35]

For all of the foregoing reasons, we vacate the trial court's judgment and remand the case for further proceedings consistent with this opinion. In light of our holdings in Divisions 4 and 5, *supra*, we recognize that such further proceedings entail two possibilities. A ruling in favor of the plaintiffs on the constitutionality of the 1993 zoning ordinance resolves the case at the trial-court level and renders the characterization of the 2004 EPD permit application moot, while a ruling in favor of Southern States, *i.e.*, that the ordinance is unconstitutional, would then necessitate resolution of the 2004 permit-application issue. Similarly, should the plaintiffs prevail in a trial on the merits of whether or not the 2004 EPD permit application was a new application, the constitutionality of the 1993 zoning ordinance would be rendered moot, whereas the question of constitutionality would still require resolution should Southern States prevail. Nevertheless, we leave a determination of how to best proceed to the trial court and the parties.

*Judgment vacated and case remanded. Doyle, P. J., and Miller, J., concur.*

---

[35] *See id.* (holding that parties' conflicting affidavits presented an issue of fact such that trial court erred in granting defendants' motion for summary judgment).